PEOPLE, *for use and benefit of* REGENTS OF UNIVERSITY OF MICHIGAN, *v.* POMMERENING.

1. EMINENT DOMAIN—CERTIORARI PROPER REMEDY TO REVIEW.

Certiorari is right method to review determination of necessity and award made in condemnation proceedings by the people for use and benefit of regents of university of Michigan, under Act No. 236, Pub. Acts 1911 (1 Comp. Laws 1915, § 349 *et seq.*), although act is silent on subject of review.

2. SAME—NECESSITY QUESTION FOR JURY.

Necessity for taking private land to establish golf course for educational purposes of university of Michigan was issue for jury, and court cannot hold, as matter of law, that in no event can such necessity exist.

3. SAME—EVIDENCE—BENEFITS.

In proceedings to condemn private land for purpose of establishing golf course as part of educational plan of university of Michigan, it was error to admit testimony that golf course would benefit balance of defendants' land, which was suitable for platting.

4. APPEAL AND ERROR—CURING ERROR—EMINENT DOMAIN—INSTRUCTION.

In proceedings to condemn private land for purpose of establishing golf course as part of educational plan of university of Michigan, error in admitting testimony that golf course would benefit defendants' land not taken was cured by instruction to jury that such claimed benefit must not be considered in fixing compensation, where such error is not reflected in award.

5. EMINENT DOMAIN—COMPENSATION.

In condemnation proceedings, award of compensation which is within range of evidence may not be disturbed on review by certiorari.

6. SAME—EFFORT TO PURCHASE.

    Where statute (Act No. 236, Pub. Acts 1911) does not require effort to purchase before beginning condemnation proceedings, such effort is not necessary.

7. JURY—QUALIFICATIONS OF JUROR—WAIVER.

    Objection that juror was not freeholder, as required by statute, was waived by failure to inquire as to qualifications of jurors on *voir dire* examination.

8. EMINENT DOMAIN—DISQUALIFICATION OF JUROR.

    In condemnation proceedings, juror was not disqualified because he was co-owner with counsel for plaintiff in a parcel of land used as basis of comparison as to value of land.

9. SAME—REGENTS OF UNIVERSITY—PRIVATE CORPORATION.

    Board of regents of university of Michigan, acting through the State, may not condemn land for the use and benefit of a private corporation.

10. SAME—OPERATING AGENCY OF UNIVERSITY NOT PRIVATE CORPORATION.

    Where corporate entity known as board in control of athletics at university of Michigan is but operating agency of regents of university in management of designated educational activities, condemnation of land by regents for use as golf course in furthering such activities is not objectionable as condemning land for use and benefit of private corporation.

Error to Washtenaw; Sample (George W.), J. Submitted January 9, 1930. (Docket No. 61, Calendar No. 34,583.) Decided April 7, 1930.

Condemnation proceedings by the people of the State of Michigan, for the use and benefit of the Regents of the University of Michigan, against Alvin H. Pommerening and another for land for a golf course. Defendants review finding of necessity and award made by writ of error, which court treats as writ of certiorari. Affirmed.

*Wilber M. Brucker,* Attorney General, and *Cavanaugh & Burke,* for plaintiff.

*Dwyer & Dwyer* and *Bonisteel & Lane,* for defendants.

WIEST, C. J.   The university of Michigan is a corporation, vested with right to invoke the power of eminent domain.

For declared educational purposes, the regents of the university, desiring land for an 18-hole golf course, instituted this proceeding to acquire, by condemnation, 10½ acres of defendants' land.  A jury in the Washtenaw circuit found the necessity for taking the land and awarded defendants $11,058 compensation.  Defendants contested the alleged need, asserted the power was being exercised in behalf of the board in control of athletics of the university of Michigan, a corporate entity, without right to invoke the power of eminent domain, and sought compensation in excess of the sum awarded.

The proceeding to take the land was brought under Act No. 236, Pub. Acts 1911 (1 Comp. Laws 1915, § 349 *et seq.*), authorizing proceedings by the State to condemn private property for public use.  The act is silent upon the subject of review.  Act No. 149, Pub. Acts 1911 (1 Comp. Laws 1915, § 353 *et seq.*), also authorizes proceedings by State agencies and public corporations to condemn private property for public use.  That act provides for review by appeal.  Why one act provides for and maps procedure for review, and the other, enacted at the same session of the legislature, is silent on the subject, when both acts are, in practical effect, in *pari materia,* is not apparent.

Defendants made application for and were allowed to take out a writ of error, and the point is raised that certiorari, and not error, is the proper method

of review. Certiorari is the right method and we now so term the review, and proceed as upon certiorari, and, within the limits of such review, to determine questions presented.

The needs of a great educational institution involve no judicial question, except it is made to appear that the desire of those having the management thereof outruns reason, and it is sought to take private property for a purpose foreign to educational purposes. The necessity for taking defendants' land, in order to establish a golf course for educational purposes of the university, was an issue before the jury, and, by verdict, found to exist. The evidence supported the verdict, and we cannot hold, as a matter of law, that in no event can such necessity exist.

The court did not give a requested instruction that the land was wanted for a golf course, but such was the whole trend of the evidence and the admitted purpose of the proceeding, and every one, inclusive of the jurors, so understood. The requested instruction stated no more than the obvious, and there was no error in not giving it. Error assigned upon exclusion and admission of evidence, with one exception, needs no review.

The land taken was but part of defendants' holding. Their land was suitable for platting, and the court admitted testimony that the golf course would benefit the land not taken. This was error. No law so permits, and all holdings forbid. The error, however, so far as possible, was cured by instruction to the jury that such claimed benefit must not be considered in fixing compensation. We cannot find the error reflected in the award. The compensation awarded was less than claimed by defendants and more than fixed by many of plaintiff's witnesses.

The award, being within the range of evidence submitted, may not be disturbed under review by certiorari.

It is claimed that no sufficient effort to purchase was made. The statute authorizing the proceeding does not require an effort to purchase, and, in such case, an effort to purchase is not necessary. *Commission of Conservation* v. *Hane,* 248 Mich. 473.

Defendants filed objections to confirmation of the verdict, stating that one juror was not a freeholder and another was disqualified by reason of his interest, as co-owner with Mr. Burke, counsel for plaintiff, in a parcel of land used by witnesses as a basis of comparison as to value. The statute required a jury of resident freeholders and the court ordered such to be summoned. The record shows the examination, by counsel, of the jurors, but no inquiry of whether they were freeholders, and, at the close of the examination, counsel announced satisfaction with the jury. The qualifications of the jurors should have been inquired into upon the *voir dire* examination, and challenge for cause, if any, then exercised. The objection now made was waived. *Village of Paw Paw* v. *Flook,* 214 Mich. 486, and cases there cited. The objection to the other juror is without merit. A juror is not disqualified by such a trend of evidence at the trial.

In the brief, counsel for defendants put this question:

"Have the board of regents of the university of Michigan, acting through the State, the power to condemn land for the use and benefit of a private corporation, whose funds, not the State's or university's, will pay for the purchase of the property condemned?"

The answer is no. A State agency, vested with power of eminent domain, may not employ the power, directly or indirectly, for the use and benefit of another, unless so authorized by law. But the answer given to the question does not at all decide this case.

The regents, by resolution, declared it necessary, for the development of physical education as an integral part of a broad program of education, to acquire the property for the use of the university, and requested the attorney general to institute the proceeding at bar. The jury found the averred necessity, the court confirmed the verdict, and vested title to the property in the State of Michigan, for the use of the regents of the university of Michigan.

The compensation awarded defendants was deposited in court by the regents. But it is contended that the purpose of this proceeding is to obtain the land for the use and benefit of a corporate entity existing wholly apart from control and management of the regents.

In 1924, under the provisions of Act No. 84, Pub. Acts 1921, and as a creature of the board of regents, a nonprofit corporation was organized for the declared purpose of "The furtherance of general or physical betterment of the students at the university of Michigan, particularly the conduct of intercollegiate athletics in said institution." The name adopted was "Board of Control of Athletics of the University of Michigan." In the articles of incorporation it was also stated:

"Said corporation is to be financed under the following general plan: Funds for operating affairs of the corporation are to be derived from (1) proceeds of sale of tickets for athletic contests; (2) athletic fees collected by university of Michigan and paid to this corporation."

The qualifications required of officers and members were fixed by the articles as follows:

"Election or designation by board of regents as member of governing board or committee in charge of intercollegiate athletics at the university of Michigan."

Supplementing this the by-laws of the corporation provided:

"The business of this corporation shall be the control and management of intercollegiate and other athletics at the university of Michigan; the furtherance of the physical development of the students thereof; the control and management of such property of the university as is now, or may hereafter be, devoted to this purpose, all in so far as the governing body of the university of Michigan has or shall from time to time delegate to the board in control of athletics of said university; the construction or extension of present plant facilities for this purpose; the collection, control and disbursement of all revenues derived from athletic games or contests or any other source."

The secretary of the board of regents, and business manager of the university, testified that he presented to the board of regents the resolution upon which this proceeding was initiated, and from his personal knowledge of the athletic program of the university, "the acquiring of this property is a part of the general program of the athletic development of the university of Michigan at the present time." We omit further quoting of testimony. The evidence clearly establishes the fact that the board in control of athletics of the university of Michigan, while a corporate entity, is but an operating agency of the regents of the university in the management

of designated educational activities, and, at all times, under full control of the regents.

We find no reversible error.

Affirmed, with costs against defendants.

Butzel, Clark, Potter, Sharpe, North, and Fead, JJ., concurred. McDonald, J., did not sit.